**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MAINE LOBSTERMEN'S ASSOCIATION, INC., | ) ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 1:21-cv-2509-JEB |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL MARINE FISHERIES, SERVICE, *et al.* | ) ) | |
| | ) | |
| *Defendants,* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CENTER FOR BIOLOGICAL DIVERSITY, 378 N. Main Avenue Tucson, AZ 85701 | ) ) ) ) | |
| | ) | |
| CONSERVATION LAW FOUNDATION, 62 Summer Street Boston, MA 02110 | ) ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| DEFENDERS OF WILDLIFE, 1130 17th Street NW Washington, DC 20036 | ) ) ) | |
| | ) | |
| *[Proposed] Intervenor-Defendants.* | ) ) | |

**MOTION TO INTERVENE OF CENTER FOR BIOLOGICAL DIVERSITY,**
**CONSERVATION LAW FOUNDATION, AND DEFENDERS OF WILDLIFE**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................1

LEGAL STANDARD.........................................................................................4

ARGUMENT .....................................................................................................5

I.      Conservation Groups' Motion is Timely ................................................5

II.     Conservation Groups Have Protectable Interests in this Action.............6

III.    The Disposition of this Action May Impair Conservation Groups' Interests............9

IV.    Conservation Groups' Interests Are Not Adequately Represented by Existing Parties ................................................12

V.     Conservation Groups Have Standing.....................................................15

CONCLUSION.................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admiral Ins. Co. v. Nat'l Cas. Co.*,
   137 F.R.D. 176 (D.D.C. 1991) ............................................................................5

*Conservation Law Found. v. Evans*,
   Case No. 00-cv-12069-DPW (D. Mass. 2001) ...........................................................8

*Conservation Law Found. v. Mosbacher*,
   966 F.2d 39 (1st Cir. 1992) ...........................................................................9, 15

*Conservation Law Found. v. Ross*,
   422 F. Supp. 3d 12 (D.D.C. 2019) .......................................................................10

*Conservation Law Found. v. Ross*,
   Case No. 18-cv-1087-JEB (D.D.C. 2018) ...............................................................8

*Crossroads Grassroots Policy Strategies v. FEC*,
   788 F.3d 312 (D.C. Cir. 2015) .........................................................................12

*Cty. of Fresno v. Andrus*,
   622 F.2d 436 (9th Cir. 1980) ..........................................................................14

*Dimond v. Dist. of Columbia*,
   792 F.2d 179 (D.C. Cir. 1986) .....................................................................12, 15

*Dist. Four Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Local
   Lodge 207 v. Raimondo*,
   18 F.4th 38 (1st Cir. 2021) ............................................................................8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
   528 U.S. 167 (2000) ...............................................................................4, 5, 16

*Fund for Animals v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) ...................................................................4, 11, 12

*Hodgson v. United Mine Workers of Am.*,
   473 F.2d 118 (D.C. Cir. 1972) .........................................................................6

*Huron Environmental Activist League v. EPA*,
   917 F. Supp. 34 (D.D.C. 1996) ........................................................................11

*John Doe No. 1 v. Glickman*,
   256 F.3d 371 (5th Cir. 2001) .........................................................................14

*Cal. ex. rel. Lockyer v. U.S.*,
   450 F.3d 436 (9th Cir. 2006) ...................................................................9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)....................................................................6, 15

*Mova Pharm. Corp. v. Shalala*,
   140 F.3d 1060 (D.C. Cir. 1998) ..........................................................4, 6

*Nat. Res. Def. Council v. Costle*,
   561 F.2d 904 (D.C. Cir. 1977) ...........................................................13

*Nat. Res. Def. Council v. Nuclear Reg. Comm'n*,
   578 F.2d 1341 (10th Cir. 1978) ............................................................9

*Nat. Res. Def. Council v. EPA*,
   99 F.R.D. 607 (D.D.C. 1983) ..............................................................6

*Nuesse v. Camp*,
   385 F.2d 694 (D.C. Cir. 1967) ............................................................4

*Smoke v. Norton*,
   252 F.3d 468 (D.C. Cir. 2001) ............................................................5

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972)...................................................................12

*Tutein v. Daley*,
   43 F. Supp. 2d 113 (D. Mass. 1999) .....................................................6

*U.S. v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ............................................................14

**Statutes**

16 U.S.C. § 1362(20) ......................................................................3

16 U.S.C. § 1387(f)(2), (5)(A), (7)(F) .......................................................3

**Other Authorities**

50 C.F.R. § 229.2 .........................................................................3

50 C.F.R. § 229.32(c)(2)(i), (4), (6)........................................................3

86 Fed. Reg. 51,970 (Sept. 17, 2021) ............................................... *passim*

Fed. R. Civ. P. 24(a)(2)............................................................ *passim*

# INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 24(a), the Center for Biological Diversity, Conservation Law Foundation, and Defenders of Wildlife (collectively, "Conservation Groups") submit this combined Motion to Intervene as Defendants and Memorandum in Support.

Conservation Groups will provide a perspective the existing parties to this case cannot—that of organizations dedicated to the preservation of imperiled species, including the critically endangered North Atlantic right whale. Conservation Groups meet the criteria for intervention as of right: this motion is timely; they have "significantly protectable" interests in the final rule affecting right whales; the disposition of this case could impair their ability to protect those interests; and Federal Defendants do not adequately represent those interests. Fed. R. Civ. P. 24(a)(2). Conservation Groups also have standing. Pursuant to Local Civil Rule 7(j), Conservation Groups have lodged a proposed answer with this motion.

Pursuant to Local Civil Rule 7(m), counsel for Conservation Groups contacted counsel for Plaintiff and Federal Defendants on November 19, 2021 to ascertain their client's position on the motion to intervene prior to filing. Counsel for Plaintiff stated on November 22, 2021 that Plaintiff takes no position on this motion. Counsel for Federal Defendants also stated on November 22, 2021 that Federal Defendants take no position on this motion.

# BACKGROUND

Plaintiff challenges a 2021 Biological Opinion ("BiOp") issued by the National Marine Fisheries Service ("NMFS") and the agency's reliance on that BiOp to issue a final rule under the Marine Mammal Protection Act ("MMPA"). 86 Fed. Reg. 51,970 (Sept. 17, 2021) ("Final Rule"). The Final Rule amends the Atlantic Large Whale Take Reduction Plan ("Plan") to

1

include new measures purporting to reduce North Atlantic right whale mortality and serious

injury from operation of the lobster fishery by approximately 60 percent below current levels.

The right whale is one of the most endangered whales on Earth. Entanglements in

commercial fishing gear, including lobster gear, are driving the species ever closer to extinction.

Scientists recently announced that the population shrank to only 336 individuals in 2020—an

eight percent decline from 2019 and the lowest number in nearly twenty years.[1] NMFS also

recently announced that right whales suffered an average of more than 31 deaths and serious

injuries *each year* from 2015 through 2019, the vast majority caused by

entanglements in commercial fishing gear.[2]

NMFS has determined that, on average, U.S. fisheries currently entangle 15.125 percent

of the right whale population each year (or roughly 55 whales per year based on a population of

368). *See* BiOp at 223.[3] It has further determined that this level of entanglement results in the

death or serious injury of 7.7 right whales per year. *Id*. Of these, the lobster fishery is responsible

for 7.57 deaths each year. *Id.* at 223–24.

The MMPA required NMFS to amend the Plan because mortality and serious injury of

right whales in commercial fishing gear vastly exceeds the right whale's potential biological

---

[1] New England Aquarium, Population of North Atlantic right whales continues its downward trajectory, Oct. 25, 2021. Available at https://www.neaq.org/about-us/newsmedia/press-kit/press-releases/ population-of-north-atlantic-right-whalescontinues-its-downward-trajectory/.

[2] NMFS, Informational Webinar: Update on Right Whale Population and Mortality Estimates, Atlantic Large Whale Take Reduction Team Webinar Nov. 2, 2021 at 20, 38, available at https://media.fisheries.noaa.gov/2021-11/Nov%202%20presentation%20to%20ALWTRT.pdf.

[3] The 2021 BiOp is publicly available at: https://www.fisheries.noaa.gov/resource/document/biological-opinion-10-fishery-management-plans.

removal level ("PBR"), let alone insignificant levels approaching a zero mortality and serious injury rate. *See* 16 U.S.C. § 1387(f)(2), (5)(A), (7)(F); 86 Fed. Reg. at 52,006 ("[t]he rate of right whale mortality and serious injuries caused by incidental entanglement in U.S. commercial fisheries . . . greatly exceed[s] PBR.").[4]

Because the lobster fishery uses over 90 percent of the vertical lines in right whale habitat in U.S. waters, 86 Fed. Reg. at 51,987, the Final Rule contains several new measures aimed at reducing this fishery's entanglement risk to right whales, including line reductions, a new 967-square mile restricted area roughly thirty miles off the coast of Maine, and a new 5,498-square mile restricted area off Massachusetts, among other measures. 50 C.F.R. § 229.32(c)(2)(i), (4), (6); Final Environmental Impact Statement ("FEIS") Vol. I at 373.[5] Fishing for lobster with static vertical buoy lines is seasonally prohibited in the two new restricted areas during certain months. *See id.* NMFS established the new restricted areas because the best available science demonstrates that they are hotspots where right whale and vertical lines co-occur at significant levels, placing the whales at increased risk of entanglement. *See* FEIS at 78. The Final Rule provides several much-needed protections to right whales. *See, e.g.*, 86 Fed. Reg. at 51,997 (the restricted area off Maine "provides significant risk reduction for right whales."); *id.* at 51,988 (with respect to the South Island Restricted Area: "Restricting buoy lines within this area between February and April provides an estimated 4.6 percent risk reduction for the entire Northeast and captures much of the risk within that area.").

---

[4] PBR means "the maximum number of animals, not including natural mortalities, that may be removed from a marine mammal stock while allowing that stock to reach or maintain its optimum sustainable population." 16 U.S.C. § 1362(20). NMFS defines "insignificant levels approaching a zero mortality and serious injury rate" to mean "10 percent of the Potential Biological Removal level for a stock of marine mammals." 50 C.F.R. § 229.2.

[5] Vol. I of the FEIS is publicly available at https://www.greateratlantic.fisheries.noaa.gov/public/nema/apsd/2021FEIS_Volume%20I.pdf.

Conservation Groups have a long history of advocating on behalf of right whales to address the existential threat of entanglement. If Plaintiff is successful here, highly imperiled right whales could lose at least some of these important protections in the Final Rule. Moreover, because Plaintiff mounts a variety of challenges to NMFS's analysis of the best available scientific data on the risk the lobster fishery poses to the right whale, Plaintiff's success in this lawsuit could also impair NMFS's ability to enact future restrictions on the fishery based on the best available science. This would impair Conservation Groups' interest in protecting the species. Conservation Groups are therefore entitled to intervene as of right.

## LEGAL STANDARD

To intervene as a matter of right under Rule 24(a)(2), the movant must: (1) file a timely application; (2) show an interest in the subject of the action; (3) demonstrate that its ability to protect that interest may be impaired by the disposition of the action; and (4) show that existing parties do not adequately protect that interest. *Fund for Animals v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). In general, Rule 24(a)(2) provides for "a liberal application in favor of permitting intervention." *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967).

D.C. Circuit caselaw establishes that "a party that seeks to intervene as of right must demonstrate that it has standing to participate in the action." *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (citation omitted). An intervenor "need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a)." *Id.*; *see also Fund for Animals*, 322 F.2d at 731–32.

To establish standing, a party must demonstrate: (1) an "injury in fact," (2) that is "fairly traceable" to the relief Plaintiff seeks, and (3) that is "likely" to "be redressed by a favorable decision." *Fund for Animals*, 322 F.3d at 733; *see also Friends of the Earth, Inc. v. Laidlaw*

4

*Envtl. Servs.*, 528 U.S. 167, 180–81 (2000). An organization has standing to sue on behalf of its members "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id*. at 181.

## ARGUMENT

Conservation Groups satisfy the criteria for intervention as of right. Their application is timely; they have an interest in the subject of the action; that interest may be impaired by the disposition of this case; and existing parties do not adequately represent their interests. Further, they have standing to intervene.

I.    <u>Conservation Groups' Motion Is Timely</u>

The timeliness of a motion to intervene is based on "consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (citation omitted). Conservation Groups' motion to intervene is timely because the present case is still in its very early stages and their participation will not prejudice the existing parties.

Plaintiff filed its complaint on September 27, 2021. *See* ECF No. 1. Federal Defendants filed their answer on December 6, 2021. *See* ECF No. 15. The same day, the Court issued a minute order directing the parties to confer and submit a joint proposed briefing schedule by December 15, 2021. Thus, all substantive issues remain to be litigated. *See Admiral Ins. Co. v. Nat'l Cas. Co.*, 137 F.R.D. 176, 177 (D.D.C. 1991) (motion to intervene timely filed where "[t]he major substantive issues … have not yet been argued or resolved, and the movants filed

their motions promptly."). Granting Conservation Groups' motion to intervene at this early stage of the proceedings will not prejudice any party. If the Court grants intervention, Conservation Groups intend to support the efficient adjudication of the case.

## II.     Conservation Groups Have Protectable Interests in this Action

Rule 24(a)(2)'s requirement that an intervenor have an interest in the subject matter of the action "has been interpreted in broad terms." *Nat. Res. Def. Council v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983). As the D.C. Circuit has observed, "[t]he right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972).

A party seeking to intervene must have an interest in the pending litigation that is "legally protectable." *Mova Pharm. Corp.*, 140 F.3d at 1074. "[T]the desire to . . . observe an animal species, even for purely esthetic purposes, is undeniably" such an interest. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–63 (1992). Further, an environmental group's active participation in enforcing the relevant statute and conducting ongoing advocacy programs directed to the matter at issue constitutes an "undoubtedly, 'significantly protectable'" interest. *Tutein v. Daley*, 43 F. Supp. 2d 113, 127 (D. Mass. 1999) (quoting *Conservation Law Found. v. Mosbacher*, 966 F.2d 39, 41 (1st Cir. 1992)).

Among other claims, Plaintiff seeks to have the 2021 BiOp, as well as NMFS's reliance on the BiOp to issue the Final Rule, held arbitrary and capricious and remanded because the agency allegedly "substantially overestimate[es] the effects of the American Lobster Fishery, including the Maine lobster fishery, on the North Atlantic right whale" and "impos[es] unnecessary and inappropriate conservation targets and restrictions on the Maine lobster

fishery." Prayer for Relief ¶ A, ECF No. 1 at 30. Consequently, the viability of measures that promise to reduce entanglement risk to right whales is at stake, as is NMFS's future ability to promulgate additional measures based on the best available scientific data to further reduce entanglement risk, as required by law.

Conservation Groups have a long history of actively advocating for protecting right whales from numerous threats, including fishing gear entanglements. These efforts include administrative and legislative advocacy, litigation, and participation as appointed members of the Atlantic Large Whale Take Reduction Team ("Team"). *See* Ex. 1, Declaration of Miyoko Sakashita, ¶¶ 8–13; Ex. 2, Declaration of Sean Mahoney, ¶¶ 6–8; Ex. 3, Declaration of Michael Senatore, ¶¶ 5–12, 15–20. Conservation Groups work to protect the right whale by reviewing scientific data and agency information, petitioning NMFS for increased protections, and monitoring and commenting on activities that have the potential to harm right whales. For example, Conservation Groups have petitioned NMFS to implement protections for the right whale under the Endangered Species Act and/or the MMPA. *See, e.g.*, Sakashita Decl. ¶¶ 8, 12; Senatore Decl. ¶¶ 8–10, 18. Conservation Groups have also been involved in a multi-year effort to obtain congressional funding through new legislation and annual appropriations for new technologies that would decrease the number of vertical lines in the water to reduce entanglement risk. *E.g.*, Mahoney Decl. ¶ 8; Senatore Decl. ¶ 19.

Conservation Groups actively participated in the development of the Final Rule through participating in Team meetings and commenting on the proposed rule and related draft documents, including the draft 2021 Biological Opinion. Sakashita Decl. ¶¶ 13–17; Mahoney Decl. ¶ 6; Senatore Decl. ¶¶ 15, 19.

Conservation Groups have brought a number of lawsuits over the years to ensure that the right whale receives the full measure of protections it is entitled to under federal law. For example, they have sued the federal government, including NMFS, for permitting activities that increase threats to right whales or failing to take sufficient action to protect the species. Sakashita Decl. ¶¶ 8, 11, 18; Mahoney Decl. ¶ 7; Senatore Decl. ¶¶ 8–10, 15–16.

Conservation Groups have specifically sued NMFS for legal violations related to right whale entanglements in fishing gear, forcing the agency to amend its fisheries management regulations to address threats to right whales. *See, e.g.*, *Conservation Law Found. v. Evans*, Case No. 00-cv-12069-DPW (D. Mass. 2001); *Conservation Law Found. v. Ross*, Case No. 18-cv-1087-JEB (D.D.C. 2018). In 2018, they challenged NMFS's authorization and management of the lobster fishery given its impact on right whales, a case still pending before this Court. *See Ctr. for Biological Diversity v. Ross*, Case No. 1:18-cv-00112 (D.D.C. 2018).

Recently, Conservation Groups successfully intervened as defendants in a lawsuit filed in the District of Maine by the Maine Lobstering Union and other plaintiffs challenging the Final Rule's establishment of a 967-square mile seasonal restricted area in federal waters off Maine. On November 16, 2021, the First Circuit Court of Appeals issued an order staying the district court's grant of a preliminary injunction to prevent the seasonal closure from taking effect. *Dist. Four Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Local Lodge 207 v. Raimondo*, 18 F.4th 38 (1st Cir. 2021). On December 3, 2021, Justice Breyer rejected MLU's emergency appeal of the First Circuit's order. No. 21A189 (Dec. 3, 2021).

Conservation Groups each have members that live in and regularly visit areas along the U.S. East Coast, including Maine and Massachusetts, where right whales are known to occur, to

enjoy, study, photograph, and observe the whales. *See, e.g.*, Ex. 4, Declaration of Molly Bartlett, ¶¶ 3, 14; Ex. 5, Declaration of Viola Patek, ¶¶ 12–13, 16–17; Ex. 6, Declaration of Sharon Young, ¶¶ 4–5, 21–22. These individuals intend to regularly engage in these activities in the future. Bartlett Decl. ¶ 10; Patek Decl. ¶ 10; Young Decl. ¶¶ 4, 8. Thus, Conservation Groups' interests here are not only direct and protectable but innately tied to their missions and members, such that these interests would be adversely affected if Plaintiff succeeds in this action.

III.     <u>The Disposition of this Action May Impair Conservation Groups' Interests</u>

Conservation Groups' interests would be adversely affected if Plaintiff prevails. Rule 24(a)(2) does not require that the applicant's interests be actually legally impaired. Rather, the Court must determine "whether disposition of the action *may*, as a practical matter, impair or impede the applicant's ability to protect its interests." *Conservation Law Found.*, 966 F.2d at 42 (emphasis added); *see also Nat. Res. Defense Council v. Nuclear Reg. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978) ("the court is not limited to consequences of a strictly legal nature."); *Cal. ex. rel. Lockyer v. U.S.*, 450 F.3d 436, 441 (9th Cir. 2006) ("a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.").

As discussed above, Conservation Groups' interests and efforts in actions to protect and prevent the right whale's extinction—and more specifically, in measures to reduce mortality and serious injury in commercial fishing gear that are based on the best available science—are substantial and longstanding. Engaging in litigation, petitioning for rulemakings protecting right whales, lobbying Congress for funding, and participating on the Team are examples of Conservation Groups' efforts. Consequently, any disposition that restricts NMFS's ability to enact measures based on the best available science to protect right whales from entanglement in

lobster gear when and where appropriate creates significant risks that the interests of Conservation Groups and their members in protecting the right whale will be compromised and impaired.

NMFS has described the right whale's situation as a "conservation crisis." It acknowledged in 2019 that "protecting every individual is a top priority. Right whales cannot withstand continued losses of mature females—we have reached a critical point."[6] And it is not just lethal entanglements that are a concern. The sublethal impacts of entanglement—especially on a whale's ability to reproduce—"may be equally harmful to the whale population." *Conservation Law Found. v. Ross*, 422 F. Supp. 3d 12, 32 (D.D.C. 2019). As that decision explained, "[b]oth lethal and sublethal effects of entanglement bring the species ever closer to extinction, from which there is, of course, no return." *Id*. at 34. Each of these statements is even more true today than when made in 2019, considering the additional eight percent decline in the right whale's population from 2019 to 2020 alone.

NMFS established new conservation measures in the Final Rule to reduce the risk that right whales will become entangled and injured or killed in lobster gear, including the identification and implementation of restricted areas where the best available science demonstrates right whales and fishing effort overlap in co-occurrence "hotspots." *See, e.g.*, 86 Fed. Reg. at 51,997; *see also* FEIS at 78 (describing NMFS's "hotspot" approach); *id.* at 81 (stating right whale density model demonstrates whale presence in restricted area off Maine during October through January when restricted area is in place; and acoustic data confirms

---

[6] NMFS, Immediate Action Needed to Save North Atlantic Right Whales, July 3, 2019. Available at: https://www.fisheries.noaa.gov/leadership-message/immediate-action-needed-save-north-atlantic-right-whales.

whale presence in the area during this time in recent years). Right whales are at heightened risk of entanglement in this area as a result.

If Plaintiff is successful, these new measures could be repealed or otherwise weakened n remand, increasing the risk right whales will become entangled. Moreover, NMFS's ability to implement additional protective measures in future rulemakings based on the best available scientific data could be hampered—measures Conservation Groups contend are both necessary to ensure the species' survival and required by law. That outcome would impair Conservation Groups' interests in protecting right whales from entanglements and conserving this critically endangered species. *See, e.g.*, Sakashita Decl. ¶ 21; Senatore Decl. ¶ 21; Young Decl.¶¶ 27–28, 46–47; Patek Decl. ¶ 17.

Moreover, Conservation Groups' and their members' various efforts through litigation, rulemaking petitions, and advocacy on the Team to push NMFS to promulgate new measures to protect right whales from entanglement in lobster gear and to base its decisions on the best available science could be nullified, further harming Conservation Groups' interests. *See Huron Environmental Activist League v. EPA*, 917 F. Supp. 34, 42–43 (D.D.C. 1996) (holding industry groups were entitled to intervene under Rule 24(a)(2) in a case where their substantial effort in developing regulations and government policy over a protracted period of time could be "nullified" by the relief the plaintiffs sought); *see also Fund for Animals*, 322 F.3d at 735 (explaining where "the task of reestablishing the status quo if" the plaintiff succeeds in its case "will be difficult and burdensome," intervention is warranted). Conservation Groups satisfy the "impairment" test for intervention of right.

IV.    <u>Conservation Groups' Interests Are Not Adequately Represented by Existing Parties</u>

The final element for intervention of right is whether there is a possibility that the existing parties will not adequately represent the applicant's interests. The potential inadequacy of representation requirement "is not onerous." *Dimond v. Dist. of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). Indeed, the burden of demonstrating inadequate representation is "minimal"; Conservation Groups need only show their interests "*may*" not be adequately represented. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); *see also Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("[A] movant 'ordinarily should be allowed to intervene unless it is clear that the [existing] party will provide adequate representation[.]'") (citation omitted).

Plaintiff— a group representing Maine lobster industry participants that seeks a declaration that NMFS's 2021 BiOp and Final Rule are unlawful, *inter alia*, for overestimating the impacts of the Maine lobster fishery on the right whale and "imposing unnecessary and inappropriate . . . restrictions on the Maine lobster fishery"—does not represent Conservation Groups' interests. *See* ECF No. 1 at 30. And Conservation Groups' and Federal Defendants' interests diverge in several ways that could affect this litigation. Indeed, the D.C. Circuit "ha[s] often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736; *see also Crossroads*, 788 F.3d at 317–18, 321 (explaining that the existence of different governmental and private interests supports intervention); *Dimond*, 792 F.2d at 192–93 (same).

Although NMFS and Conservation Groups presumably share one objective in this lawsuit—rejecting Plaintiffs' efforts to obtain a court order declaring the 2021 BiOp and Final Rule unlawful for failing to base its decisions on the best available scientific data and for

enacting conservation measures that put restrictions on the lobster fishery (including two new restricted areas)—that is not assured at this point, and certainly not true for every issue presented by the case. *Cf.*, *e.g.*, *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) ("[A] shared general agreement [between intervenors and the agency] that the [agency action] should be lawful does not necessarily ensure agreement in all particular respects about what the law requires" and they "may well have honest disagreements . . . on legal and factual matters.").

As one example, Plaintiff's Second Claim challenges NMFS's "Conservation Framework," one of the "agency actions" NMFS consulted on in the 2021 BiOp, as arbitrary and capricious under the Administrative Procedure Act ("APA"). *See* ECF No. 1 at ¶ 98–102. In contrast, Conservation Groups' position is that the Conservation Framework is neither an agency action for ESA consultation purposes nor an agency action subject to challenge under the APA. It is highly unlikely, to say the least, that NMFS will represent Conservation Groups' interest regarding the Conservation Framework in this lawsuit. *See* ECF No. 170 at ¶¶ 100–101, 113, 130–137, *Ctr. for Biological Diversity v. Raimondo*, Case No. 18-cv-112-JEB (Second Supplemental/Amended Complaint).

Moreover, the ultimate objectives and positions of Conservation Groups and Federal Defendants differ. Conservation Groups have challenged the 2021 BiOp and Final Rule, but on very different grounds than does Plaintiff. Conservation Groups allege—contrary to Plaintiff's claims here and to NMFS's position in Conservation Groups' case—that the Final Rule violates the MMPA and other laws by *not* adopting sufficient measures to reduce right whale death and injury from the lobster fishery to MMPA-mandated levels. *See* ECF No. 181, *Ctr. for Biological Diversity v. Raimondo*, Case No. 18-cv-112-JEB (Federal Defendants' answer denying

Plaintiffs' allegations). Thus, it is extremely unlikely NMFS will advance the interests of Conservation Groups here.

Additionally, as shown above, Conservation Groups have repeatedly had to sue NMFS over the years to force the agency to comply with its statutory obligations to protect right whales from various threats, including entanglements in commercial fishing gear. As other courts have held in comparable circumstances, considering this history, it is unlikely NMFS will make identical arguments or adequately represent Conservation Groups' interests. *See Cty. of Fresno v. Andrus*, 622 F.2d 436, 439 (9th Cir. 1980) ("there is further reason to doubt that the [agency] will fully protect [the applicant's] interest . . . in light of the fact that the [agency] began its rulemaking only reluctantly after [the applicant] brought a law suit against it."); *Coal. of Ariz./N.M. Counties*, 100 F.3d 837, 845 (10th Cir. 1996) (agency's "ability to adequately represent [the applicant] . . . is made all the more suspect by its reluctance in protecting the [species], doing so only after [the applicant] threatened, and eventually brought, a law suit to force compliance with the Act"). Based on this history, it is likely that NMFS will interpret its legal obligations differently and take positions based on those interpretations that are inconsistent with those of Conservation Groups. Conservation Groups' distinct perspective on NMFS's legal obligations with respect to the right whale will offer necessary elements to the proceedings that other parties will neglect. *See U.S. v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002).

Finally, the federal government must represent the "broad public interest," while Conservation Groups have a more discrete, particularized interest in the protection and recovery of imperiled species such as the right whale. *John Doe No. 1 v. Glickman*, 256 F.3d 371, 381 (5th Cir. 2001) (government agency may not adequately represent interests of public interest animal welfare group "given . . . [agency's] duty to represent the broad public interest"); *see also*

*Dimond*, 792 F.2d at 192–93 (finding an agency "would be shirking its duty were it to advance [an individual's] narrower interest at the expense of its representation of the general public interest"). These differences will prevent NMFS from adequately representing Conservation Groups' interests. Conservation Groups should be granted leave to intervene as of right.

V.    Conservation Groups Have Standing

Conservation Groups' declarations demonstrate that each of the relevant standing standards is met. *See* Ex. 1–6.

First, as explained above, Plaintiff's lawsuit threatens Conservation Groups' members' various interests in right whales. *See Lujan v. Defenders*, 504 U.S. at 562–63 ("the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing"); *Conservation Law Found.*, 422 F. Supp. 3d at 19–22 (finding Conservation Law Foundation had standing to challenge a rule opening right whale habitat to fishing on behalf of its members). *See supra* Section II (describing how Plaintiff's lawsuit will impair Conservation Groups' members' interests in observing, studying, and protecting right whales). If Plaintiff is successful in securing a court order that the 2021 BiOp and NMFS's reliance on it in issuing the Final Rule are unlawful for "substantially overestimating" the U.S. lobster fishery's effects on the right whale and "imposing unnecessary and inappropriate . . . restrictions on the Maine lobster fishery" and remanding the agency actions on that basis, right whales could lose important conservation measures designed to reduce right whale mortality and serious injury in lobster gear. Such an order could also restrict NMFS's ability to enact additional restrictions on lobster fishing with vertical buoy lines that entangle and kill right whales based on the best available scientific data.

Second, Conservation Groups are dedicated to the protection of wildlife, including protecting right whales from entanglement in fishing gear. *See supra* Section II. The interests at stake in this case are therefore germane to Conservation Groups' organizational purposes.

Finally, neither the claims asserted nor the relief sought require the participation of individual members. *See Laidlaw*, 528 U.S. at 181.

## CONCLUSION

Conservation Groups respectfully request that the Court grant them leave to intervene as of right under Rule 24(a).

Respectfully submitted this 8th day of December 2021,

/s/ *Kristen Monsell*
Kristen Monsell, DC Bar No. CA00060
Center for Biological Diversity
1212 Broadway, Ste. 800
Oakland, CA 94612
(510) 844-7137
kmonsell@biologicaldiversity.org

/s/ *Jane P. Davenport*
Jane P. Davenport, DC Bar No. 474585
Defenders of Wildlife
1130 17th Street, NW
Washington, DC 20036
(202) 722-3274
jdavenport@defenders.org

/s/ *Erica A. Fuller*
Erica A. Fuller, DC Bar No. MA0001
Conservation Law Foundation
62 Summer St.
Boston, MA 02110
(617) 850-1754
efuller@clf.org

*Attorneys for [proposed] Intervenor-Defendants*