UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAINE LOBSTERMEN'S ASSOCIATION, INC., | |
| *Plaintiff*, | |
| and | |
| STATE OF MAINE, DEPARTMENT OF MARINE RESOURCES, | |
| *[Proposed] Intervenor-Plaintiff*, | Case No:  1:21-cv-2509 JEB |
| v. | |
| NATIONAL MARINE FISHERIES SERVICE, et al., | |
| *Federal Defendants*, | |
| and | |
| CONSERVATION LAW FOUNDATION, INC., et al., | |
| *Intervenor-Defendants*. | |

## MOTION TO INTERVENE

The State of Maine, through its Department of Marine Resources ("Maine DMR"), hereby moves to intervene as a Plaintiff in the above-captioned action as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2).  Alternatively, Maine DMR moves to intervene as a Plaintiff permissively pursuant to Rule 24(b)(1).

As explained more fully in the attached memorandum of law, this motion is timely and complies with the Court's Minute Order of December 15, 2021.  Maine DMR has protectable

interests that will be affected by the outcome of the next phase of the litigation.  In addition, those interests may not be adequately protected by those entities who are already parties to the litigation.

Pursuant to Local Rule 7(j), Maine DMR's proposed Complaint-in-Intervention has been submitted with this motion and is attached as **Exhibit A**.

This motion is based on Federal Rule of Civil Procedure 24, the Memorandum of Points and Authorities in Support of Motion to Intervene, the concurrently filed Declarations of Patrick Keliher and Megan Ware, all pleadings and papers on file in this action, and upon such matters as may be presented to the Court at the time of the hearing.

Pursuant to Local Rule 7(m), counsel for Maine DMR has conferred with counsel for the existing parties.  Counsel for Plaintiffs do not oppose this motion.  Counsel for Federal Defendants indicated they take no position on the motion.  Counsel for Intervenor-Defendants also indicated they take no position on the motion.

Dated:  December 16, 2021

*/s/ Linda R. Larson*
Linda R. Larson, D.D.C. Bar No. MI00059
Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone:  206.395.7630
Facsimile:   206.257.0780
llarson@nossaman.com

Paul S. Weiland, D.D.C. Bar No. CA00005
Nossaman LLP
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone:  949.833.7800
Facsimile:  949.833.7878
pweiland@nossaman.com

*Attorneys for the State of Maine, Maine Department of Marine Resources*

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION. ...................................................................................................1

II.    BACKGROUND ...................................................................................................1

    A.    Procedural History. ..................................................................................1

    B.    Maine manages the lobster fishery in its state waters. ............................2

    C.    Maine is actively involved in developing right whale conservation measures. ............3

III.    ARGUMENT .......................................................................................................7

    A.    Legal Standard. ........................................................................................7

    B.    Maine DMR has Article III standing. ......................................................7

    C.    Maine DMR is entitled to intervention as a matter of right. ...................12

        1.    Maine DMR's motion is timely. ..................................................12

        2.    Maine DMR has a significant interest in this action. .................14

        3.    Maine DMR's interest may be impaired if Federal Defendants prevail. ..............14

        4.    Maine DMR's interests cannot be adequately represented by existing parties. ....15

    D.    Alternatively, Maine DMR should be granted permissive intervention. ....................17

IV.    CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alaska Wilderness League,*
  99 F. Supp. 3d 112 (D.D.C. 2015) ............................................................13

*Building & Constr. Trades Dep't v. Reich,*
  40 F.3d 1275 (D.C. Cir. 1994) ...................................................................7

*Center for Biol. Div., et al. v. Raimondo,*
  D.D.C. Case No. 18-cv-112 .......................................................................13

*Center for Biological Diversity v. Ross* ........................................................17

*Commonwealth of Pa., by Shapp v. Kleppe,*
  533 F.2d 668 (D.C. Cir. 1976) ...................................................................9

*\*Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n,*
  788 F.3d 312 (D.C. Cir. 2015) ............................................................12, 15

*Equal Emp't Opportunity Comm'n v. Nat'l Children's Ctr.,*
  146 F.3d 1042 (D.C. Cir. 1998) .................................................................17

*Forest Conservation Council v. U.S. Forest Serv.,*
  66 F.3d 1489 (9th Cir. 1995) .....................................................................16

*\*Fund For Animals Inc. v. Norton,*
  322 F.3d 728 (D.C. Cir. 2003) ........................................................... *passim*

*Georgia v. Tennessee Copper Co.,*
  206 U.S. 230 (1907) ...............................................................................8, 9

*\*Hodgson v. United Mine Workers of Am.,*
  473 F.2d 118 (D.C. Cir. 1972) ...................................................................7

*\*Massachusetts v. E.P.A.,*
  549 U.S. 497 (2007) ...................................................................................8

*Natural Res. Def. Council v. Costle,*
  561 F.2d 904 (D.C. Cir. 1977) ...................................................................14

*Navistar, Inc. v. Jackson,*
  840 F. Supp. 2d 357 (D.D.C. 2012) ...........................................................13

*Nuesse v. Camp,*
  385 F.2d 694 (D.C. Cir. 1967) ...................................................................7

*Old Dominion Elec. Coop. v. Fed. Energy Regulatory Comm'n*,
    892 F.3d 1223 (D.C. Cir. 2018) ..................................................................................7

*Red Lake Band of Chippewa Indians v. U.S. Corps*,
    338 F.R.D. 1 (2021) ....................................................................................................14

*Roane v. Leonhart*,
    741 F.3d 147 (D.C. Cir. 2014) ..................................................................................13

*Roeder v. Islamic Republic of Iran*,
    333 F.3d 228 (D.C. Cir. 2003) ..................................................................................12

*Sokaogan Chippewa Cmty. v. Babbitt*,
    214 F.3d 941(7th Cir. 2000) ......................................................................................12

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ....................................................................................................15

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) ..........................................................................13, 15

*WildEarth Guardians v. U.S. Forest Serv.*,
    573 F.3d 992 (10th Cir. 2009) ..................................................................................17

**State Statutes and Regulations**

Me. Rev. Stat. Title 1
    § 2 (1973) ................................................................................................................8, 15

Me. Rev. Stat. Title 12
    § 6021 (1977) ..........................................................................................................8, 16

Me. Rev. Stat. Title 12
    §§ 6051-52 (1977) ......................................................................................................16

**Federal Rules and Regulations**

Fed. R. Civ. P. 24(a) ................................................................................ *passim*

Fed. R. Civ. P. 24(a)(2) ........................................................................... *passim*

Fed. R. Civ. P. 24(b)(1) ..........................................................................................1

Fed. R. Civ. P. 24(b)(1)(B) ...................................................................................17

50 C.F.R. § 229.32(a)(3) (2020) ..............................................................................9

72 Fed. Reg. 57,104, 57,612 (Oct. 5, 2007) ............................................................9

U.S. District Court for the District of Columbia Local Rule 7(m) ..................1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.      INTRODUCTION.

Pursuant to Federal Rule of Civil Procedure 24(a)(2), the State of Maine ("Maine" or "State"), through its Department of Marine Resources ("Maine DMR"), respectfully moves to intervene as of right as a plaintiff in this action.  Maine DMR brings a unique perspective to this case and both has standing to proceed as a plaintiff and fulfills the requirements for intervention as of right in light of its role and interest in managing its natural resources as a quasi-sovereign. Alternatively, Maine DMR respectfully requests the Court allow it to permissively intervene in this matter in accordance with Federal Rule of Civil Procedure 24(b)(1).

Pursuant to U.S. District Court for the District of Columbia Local Rule 7(m), counsel for Maine DMR has conferred with counsel for all parties.  Counsel for Plaintiffs indicated they do not oppose the motion.  Counsel for Federal Defendants indicated they take no position on the motion.  Counsel for Intervenor-Defendants also indicated they take no position on the motion.

## II.     BACKGROUND

### A.      Procedural History.

This is one of a number of matters involving the management of the lobster fishery on the Eastern seaboard in the context of efforts to protect the North Atlantic right whale population.  The recent suite of cases all involve the biological opinion that evaluates the potential impacts of the authorization of the American lobster fishery on the North Atlantic right whale (the "2021 Biological Opinion"), and the September 2021 final rule amending the regulations implementing the Atlantic Large Whale Take Reduction Plan (the "Final Rule").  As the Court is aware, this matter was filed on September 27, 2021.  To date, the only activity in the case has been Federal Defendants' motion to consolidate denied on December 6, 2021, and Conservation Law Foundation's motion to intervene granted on December 9, 2021.

**B.      Maine manages the lobster fishery in its state waters.**

The American lobster fishery along the Atlantic coast is largely a nearshore fishery occurring in state waters within three nautical miles ("nm") of the coast, and approximately 70% of Maine's lobster fishery occurs in its state waters.  Declaration of Patrick Keliher ("Keliher Decl.") at ¶ 5.  The management framework for the lobster fishery along the Atlantic coast is developed in the first instance by the Atlantic States Marine Fisheries Commission ("the Commission"), not NMFS.  *Id.*  The Commission developed the current Lobster Fishery Management Plan and consistently updates it.  *Id.*  As part of the compact, the participating states implement plan measures through adoption and enforcement of their respective state regulations to regulate the fishery in state waters.  *Id.*  NMFS regulates commercial fishing activity in the federal Exclusive Economic Zone ("EEZ") from 3-200 nm.  *Id.* at ¶ 6.  It implements the Commission's Lobster Fishery Management Plan measures in the EEZ through federal regulations.  *Id.*  A federal fishery management plan for American lobster is not currently in place pursuant to the Magnuson-Stevens Fishery Conservation and Management Act.  *Id.*

To harvest lobster in Maine state waters, or to land lobster in Maine, harvesters must be licensed by the State.  *Id.* at ¶ 7.  To harvest lobster in federal waters, harvesters must also hold a federal permit that authorizes lobster harvest.  *Id.*  State licenses and federal permits authorize harvesters to harvest in specific areas, and areas may have differing restrictions, such as the number of traps that may be fished, or the size of the lobster that may be retained.  *Id.*  Lobster harvesters licensed by the State are subject to Maine's statutes and regulations even if they are fishing in federal waters and must follow the most restrictive measures of any jurisdiction where they are licensed or permitted.  *Id.*  There were 5,745 commercial harvesters licensed to harvest lobster in Maine in 2020, and approximately 1,260 of those held federal permits.  *Id.*

Maine DMR is an active participant in the management of lobster at the Commission. Keliher Decl. ¶ 8.   The Lobster Management Plan is developed by the American Lobster Management Board (Lobster Board), which is comprised of Commissioners from the states of Maine through Virginia.   *Id.*   Maine DMR's Senior Lobster Biologist, Kathleen Reardon, has served as Chair of the Commission's Technical Committee for four years, and serves on a Plan Development Team currently working on measures to promote resiliency in the Gulf of Maine lobster stock.   *Id*.   Ms. Reardon also serves on the Plan Review Team responsible for evaluating state compliance.   *Id*.   Maine DMR GIS Specialist, William DeVoe, is serving on a separate Plan Development Team for the newly initiated Addendum on vessel tracking.   *Id*.

In 1995, Maine implemented a management system for the lobster fishery that created seven management zones, each of which is represented by a council comprised of harvesters to facilitate regional management.   *Id.* at ¶ 16.   Each Zone Council has authority to make certain decisions about the operation of the fishery within their zone.   *Id.*   Maine DMR provides one full time mid-level policy position, the Lobster Resource Management Coordinator, to support the Zone Councils.   *Id*.   The position also supports the Lobster Advisory Council, whose role is to advise the Commissioner on activities of the department related to the lobster industry, including research.   *Id*.   In addition to the Resource Management Coordinator, much of the agency's senior leadership team spends a significant portion of their time working on issues related to the management of the lobster fishery and on other policy issues that will impact the lobster fishery. *Id*.

### C.     Maine is actively involved in developing right whale conservation measures.

Maine has been taking steps to protect right whales in the lobster fishery for many years. Maine DMR has been an active participant in the federal process to develop conservation measures

for the North Atlantic right whale, which includes consistent participation on the Atlantic Large Whale Take Reduction Team ("ALWTRT").  Declaration of Megan Ware ("Ware Decl.") at ¶ 5. The ALWTRT is a multi-stakeholder body, and its membership includes representatives of state agencies, federal agencies, research entities, fishermen, and environmental organizations.  *Id*. at ¶ 6.  Maine DMR holds a seat on the ALWTRT and actively participates in discussions and meetings.  *Id*.  To date in 2021, Maine DMR staff have attended five ALWTRT webinar meetings and six ALWTRT informational meetings covering various topics including updates to the Decision Support Tool used by NMFS to assess risk to right whales, calving rates, and Canada's right whale conservation measures.  *Id*.  Maine DMR staff also participated in an April 2019 in-person meeting of the ALWTRT where modifications in the Northeast lobster and Jonah crab fisheries were discussed.  *Id*.

Maine DMR developed its *Proposal to Amend the Atlantic Large Whale Take Reduction Plan* (Dec. 27, 2019) (the "Proposal"), which it submitted to NMFS for inclusion as a preferred alternative in the ongoing federal rulemaking process.  Ware Decl. at ¶ 8. The Proposal included four primary elements: 1) a reduction in vertical endlines by increasing the minimum number of traps that must be fished per vertical endline ("trawling up"); 2) a requirement for insertion of "weak points" in the vertical endlines, with varying numbers based on distance from shore, to ensure that in the event a whale gets entangled, the encounter will not result in serious injury or mortality; 3) a state-specific gear mark to help managers more accurately determine the origin of gear involved in entanglement; and 4) a request for conservation equivalency, a mechanism that would allow states to propose measures on a more local or regional scale which achieve equivalent conservation outcomes in recognition of the diversity of Maine's fleet and safety concerns.  *Id.*

Maine DMR has also been heavily involved in the federal process leading to the 2021 Biological Opinion and the Final Rule.  Maine DMR's engagement in the process that led to these actions by NMFS has occurred during meetings with both regulators and the regulated community, and through the submittal of public comment letters.  Ware Decl. at ¶¶ 7-9, 11-13.  In its February 2021 letter providing comments on the draft Biological Opinion, Maine DMR identified several concerns regarding assumptions, data, calculations and conclusions in the draft Biological Opinion that resulted in the draft attributing the majority of risk to right whales to the U.S. lobster fishery. Ware Decl. at ¶ 7.  Among other things, Maine DMR expressed its concerns regarding unsupported assumptions in the attribution of mortality/serious injury to the lobster fishery, the conservation framework, and the underlying assumptions and sensitivity of the Biological Opinion's population modeling.  *Id.*  NMFS did not change the analyses in the final Biological Opinion in response to Maine DMR's comments.  *Id.*

Maine DMR conducted extensive outreach with the Maine lobster industry regarding right whales.  *Id*. at ¶¶ 12-13.  Since August 2019, Maine DMR has held 22 Lobster Zone Council meetings; this includes two full rounds of Zone Council meetings in each of Maine's seven lobster zones.  *Id*. at ¶ 12.  Each round of meetings required the coordination of nearly 100 harvesters who serve on the Zone Councils, which are part of Maine's management structure for state fisheries. *Id*.  In addition, Maine DMR held three Lobster Advisory Council meetings, conducted numerous (at least 10) Lobster Zone sub-committee meetings to develop Zone-specific conservation equivalency proposals, and participated in several industry association Board meetings.  *Id*.  In between these meetings, Maine DMR staff worked directly with industry members via phone, email, or over video calls to evaluate proposals as they were developed and provide analyses and feedback on industry generated conservation ideas.  *Id*.

Maine DMR also conducted a public hearing on the adoption of Maine's state-specific gear marking as a part of the state regulatory process.  *Id*.  In addition to these outreach meetings, Maine DMR science staff also held workshops with harvesters for the development of the gear modifications that were being proposed in the Final Rule.  *Id*. at ¶ 13.  Three workshops were held in the summer of 2020 to test rope and develop ideas for whale-safe weak points, and two additional workshops were held in the winter of 2020 and the spring of 2021 with harvesters to provide feedback on the design of prototypes of newly engineered gear modifications.  *Id*.

In addition, Maine DMR actively engaged in the development of right whale conservation measures via written comment, including by submitting letters to NMFS during all public comment periods prior to promulgation of the Final Rule.  Ware Decl. ¶ 7.  Maine DMR identified three primary concerns in its comments on the proposed rule issued by NMFS in December 2020. *Id*. at ¶ 9.  First, it recommended that the Final Rule should allow for the use of alternative trawl configurations that achieve the same conservation benefit.  *Id*.  Second, Maine DMR recommended the Final Rule should incorporate conservation-equivalent measures that Maine DMR worked with lobster industry members to develop, which were more reflective of the local fishing practices and oceanographic conditions in different parts of the Maine coast.  *Id*.  Finally, Maine DMR commented that there was a significant lack of recent data to support the inclusion of the seasonal offshore gear restricted area (i.e., closure) within Lobster Management Area 1.[1]  *Id*.

Ultimately, NMFS adopted some measures in the Final Rule from Maine DMR's comments on the proposed rule and accompanying environmental impact statement, including the inclusion of alternative trawl configurations that achieve the same conservation benefit.  *Id*. at

---

[1] Lobster Management Area 1 extends from the Maine coast seaward approximately 40 nm and nearly all of Maine's 1,200 federal permit holders operate within this area.

¶ 10.  The Final Rule also incorporated most of the conservation-equivalent measures for each management zone that Maine DMR developed in concert with industry from shore seaward to 12 nm.  *Id.*  However, the Final Rule did not include Maine DMR's recommendation to exclude the gear restricted area in Lobster Management Area 1 or to use a trigger mechanism to implement that gear restricted area, nor did it adjust the gear marking requirements to minimize financial and operational hardship to Maine fishermen.  *Id.*

## III.   ARGUMENT

### A.   Legal Standard.

For a proposed plaintiff-intervenor, the D.C. Circuit has held that intervention is appropriate if the intervenor meets the requirements of Rule 24 of the Federal Rules of Civil Procedure and has Article III standing.  *Building & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994).  That said, the D.C. Circuit takes a "liberal" approach to intervention, consistent with Rule 24's purpose of protecting third parties affected by the litigation.  *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967).  The D.C. Circuit has explained that "[t]he right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard."  *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972).

As demonstrated below, Maine DMR has Article III standing and is entitled to intervention as a matter of right or, in the alternative, should be granted permissive intervention.

### B.   Maine DMR has Article III standing.

The D.C. Circuit requires all prospective intervenors to establish Article III standing: injury-in-fact, causation, and redressability.  *Old Dominion Elec. Coop. v. Fed. Energy Regulatory*

*Comm'n*, 892 F.3d 1223, 1232-33 (D.C. Cir. 2018).  "It is of considerable relevance that the party

seeking review here is a sovereign State and not … a private individual."  *Massachusetts v. E.P.A.*,

549 U.S. 497, 518 (2007).  "Well before the creation of the modern administrative state", the

Supreme Court recognized that "states are not normal litigants for the purposes of invoking federal

jurisdiction."  *Id.*  As Justice Holmes explained:

> The State owns very little of the territory alleged to be affected, and
> the damage to it capable of estimate in money, possibly, at least, is
> small.  This is a suit by a State for an injury to it in its capacity of
> quasi-sovereign.   In that capacity the State has an interest
> independent of and behind the titles of its citizens, in all the earth
> and air within its domain.  It has the last word as to whether its
> mountains shall be stripped of their forests and its inhabitants shall
> breathe pure air.

*Id.* at 518-19 (emphasis omitted) (quoting *Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 237

(1907)).

In general, Maine's jurisdiction extends from shore seaward three nm.  Maine laws and

regulations apply to all license holders throughout the coastal waters of the State, which extends

to the limits of the federal EEZ.  Maine has the legal authority to manage and develop resources

throughout the water column and on and under the seafloor, including navigation, fishing, and

commerce.  Control over the right to permit harvesting of marine resources is delegated to Maine

DMR.  Me. Rev. Stat. tit. 1, § 2 (1973).  Maine, like other states, historically has had, and continues

to have, primacy with respect to management of fish and wildlife within its borders including

within this zone.  As the agency entrusted with management of marine resources within state

waters, Maine DMR's purposes include conserving and developing marine and estuarine

resources, conducting and sponsoring scientific research, and promoting and developing Maine

coastal fishing industries.  Me. Rev. Stat. tit. 12, § 6021 (1977); Keliher Decl. at ¶ 2.

Much of the territory that is affected by federal restrictions on the lobster fishery is not only subject to the jurisdiction of Maine as sovereign; it is also owned by Maine in fee.  Therefore, there is no question that those restrictions, included in the 2021 Biological Opinion and Final Rule, result in actual injury to Maine that is concrete and particularized.  Most of the Maine lobster fishery operates within inshore exempted waters[2] and the majority of Maine-licensed lobster fishermen are permitted to fish only in state waters shoreward of the three-mile line.  Although the exemption line and the three-mile line delineating state waters overlap at times, they are not coextensive.  Atlantic Large Whale Take Reduction Plan Regulations, 50 C.F.R. § 229.32(a)(3) (2020).

The earliest cases allowing a state to sue as representative of its citizens involved the protection or preservation of land or other natural resources, wherein the state concern did not arise from a direct property interest of its own but from its sovereignty over all territory within its boundaries.  *E.g.*, *Georgia v. Tennessee Copper Co.*, 206 U.S. 230 (1907).  More recently, courts, including the D.C. Circuit, have recognized that states also have an underlying interest in the continuing prosperity of their economies.  *See Com. of Pa., by Shapp v. Kleppe*, 533 F.2d 668 (D.C. Cir. 1976) (upholding a state's standing to challenge actions whose clear and direct effects would be a substantial disruption of a state's internal economy and an impairment of the well-being of the citizenry).

In the last several years, lobster has been the highest value single-species fishery in the nation, and Maine has landed approximately 80% of that product each year.  Keliher Decl. at ¶ 12.

---

[2] The federal exemption line demarcates an area into which NMFS found, based on scientific data, endangered large whales rarely venture. 72 Fed. Reg. 57,104, 57,612 (Oct. 5, 2007) (response to comment 337).  Waters within or shoreward of the exemption line are exempted from the Atlantic Large Whale Take Reduction Plan and outside right whale critical habitat.

As such, Maine's lobster industry is of critical and growing importance to the State's economy. *Id.* In the last seven years, revenues from Maine's lobster fishery at the first point of sale have ranged between $400-540 million annually. *Id.* This revenue has become an increasingly significant portion of the overall revenues from living marine resources landed in Maine. *Id.* In 2020, lobster represented 79% of total revenue from all marine species landed. *Id.*

There were approximately 5,745 commercial license holders in Maine's limited entry lobster fishery in 2020, including 1,100 student license holders who are completing the requirements of a program established to provide entry into the fishery for young people from fishing communities. Keliher Decl. at ¶7. In many coastal communities along mid-coast and Downeast Maine and its islands, the lobster fishery provides one of the few sources of employment. *Id.* at ¶ 14. As NMFS has acknowledged, the counties in mid-coast and Downeast Maine, where the lobster fishery is the major driver of the commercial fishing economy, are the most vulnerable to adverse social impacts from right whale regulations. *Final Environmental Impact Statement, Regulatory Impact Review, and Final Regulatory Flexibility Analysis for Amending the Atlantic Large Whale Take Reduction Plan: Risk Reduction Rule* (June 2021) at 290. These counties are highly dependent on fishing, and the high poverty and unemployment rates in these counties suggest that they have limited capacity to absorb additional economic stress. *Id.* at 291.

Moreover, the cultural importance of the lobster fishery to the coastal communities of Maine cannot be overstated, with many families containing 5th, 6th, or even 7th generation lobster fishermen. Keliher Decl. at ¶ 14. Many license holders continue to purchase and hold their licenses long after the time when they may actively fish, because the possession of the license is central to their identity as a lobsterman. *Id.* It is common for Maine DMR to receive requests to

assign the lobster license number of a lobsterman who has passed away to a relative who is fishing, as a way to honor the former license holder. *Id*. The licensing system is designed to support access to the fishery for young people growing up on the coast of Maine, to ensure that future generations can pursue the same livelihood as those before them. *Id*.

Finally, injury to Maine stems from the anticipated effects of the federal restrictions on the license fees it receives from thousands of harvesters and the resources it has invested in the sustainable management of the lobster fishery. Any reduction in the number of licenses sold has the potential to impact Maine DMR revenues, thereby resulting in direct economic impacts to the agency's budget. *Id.* at ¶ 11. Maine DMR takes in just over $3 million annually in licensing revenue from lobster harvesters and dealers, but work that is fully attributable to lobster represents a higher percentage of the department's annual $30 million budget. *Id*. Approximately $2.4 million is spent annually on staff salaries and benefits specifically related to the lobster fishery. *Id*.

Maine has also invested significantly in the sustainable management of its lobster fishery. In work conducted under a Joint Enforcement Agreement with NMFS for enforcement in federal waters, the Maine Marine Patrol, Maine DMR's law enforcement bureau, spent over 4,000 hours on gear compliance, and over 650 hours on compliance related to vessel and dealer reporting from July 1, 2020 through June 30, 2021. *Id.* at ¶ 19. The large majority of this work was specifically focused on lobster harvesting and sales. *Id.* In that same period, Maine Marine Patrol hauled and inspected 13,970 lobster traps and issued 416 lobster-related violations (74 summons and 342 warnings). *Id*. Maine DMR's Bureau of Marine Patrol is the most well-equipped natural resource law enforcement entity in the region, having more offshore enforcement vessels then all other New England states and NOAA's Office of Law Enforcement, combined. *Id*.

Thus, it cannot be disputed that Maine, through Maine DMR, is injured by the imposition of the federal restrictions, that these restrictions are traceable to the actions of NMFS in adopting the 2021 Biological Opinion and promulgating the Final Rule, and that they are likely to be redressed by a favorable decision from this Court.  In other words, Maine DMR has a cognizable interest in the ultimate outcome of this controversy, particularly with respect to its continuing management and regulation of the fisheries, wildlife, and commerce under its jurisdiction.

"With respect to intervention as of right in the district court, the matter of standing may be purely academic."  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003).  "[A]ny person who satisfies Rule 24(a) will also meet Article III's standing requirement."  *Id.* (citing *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000)).  As discussed below, Maine DMR meets the criteria for intervention as a matter of right under Rule 24(a)(2). Accordingly, Maine DMR has Article III standing to intervene.

**C.**     **Maine DMR is entitled to intervention as a matter of right.**

Rule 24(a)(2) sets forth a four-factor test for intervention as of right: "1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest."  *Crossroads*, 788 F.3d at 320; Fed. R. Civ. P. 24(a)(2).  Because Maine DMR satisfies each of the four requirements under Rule 24(a), as discussed below, it is entitled to intervene as a matter of right in this matter.

**1.**     **Maine DMR's motion is timely.**

The timeliness requirement under Rule 24(a) takes into account multiple considerations that include "time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability

of prejudice to those already parties in the case." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980). "[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). If a motion to intervene is filed before any substantive progress has been made in the case, it is timely. *E.g. Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 361 (D.D.C. 2012) (intervention timely where motion to intervene was filed two and a half months after the complaint had been filed and less than two weeks after defendants had filed their responsive pleadings); *Alaska Wilderness League*, 99 F. Supp. 3d 112, 122 (D.D.C. 2015) (motion to intervene timely when it "arrived very early in the lifecycle of this case").

Under these standards and the Court's Minute Order of December 15, 2021, Maine DMR's intervention is timely. Plaintiffs filed their complaint on September 27, 2021 (ECF No. 1). Federal defendants filed their answer on December 6, 2021. The only activity to date in the case was Federal Defendants' motion to consolidate the case with *Center for Biol. Div., et al. v. Raimondo*, D.D.C. Case No. 18-cv-112 (a case in which Maine DMR is an intervenor), which was denied, and Conservation Law Foundation's motion to intervene, which was granted. Under these circumstances, intervention will neither prejudice any of the parties nor disrupt the orderly and timely determination of the issues in this case.

Moreover, Maine DMR is prepared to comply with the briefing schedule set by the Court's December 15, 2021 Minute Order; coordinate with the other parties to avoid duplicative briefing; and otherwise structure its participation so that the litigation proceeds in orderly fashion and intervention does not complicate case management.

**2.      Maine DMR has a significant interest in this action.**

An applicant seeking to intervene as a matter of right must demonstrate that it has a significant interest relating to the subject of the litigation.  Fed. R. Civ. P. 24(a)(2).  If a proposed intervenor has Article III standing, then that is sufficient to establish this factor.  *Fund For Animals Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) ("*Fund for Animals*"); *Red Lake Band of Chippewa Indians v. U.S. Corps*, 338 F.R.D. 1, 5-6 (2021) ("The Court's conclusion that a putative intervenor has constitutional standing is alone sufficient to establish its interest in the property or transaction which is the subject of the action.") (quoting *Fund for Animals*, 322 F.3d at 735).  As discussed above, Maine DMR satisfies Article III standing requirements and, as a consequence, has a significant interest in this action.

Specifically, Maine DMR has a significant interest in the outcome of this action in light of the likelihood that it will affect the state as well as the federal lobster fishery.  This interest is multi-faceted and includes protection of Maine's interests as a quasi-sovereign, as described by Justice Holmes, its interests on protecting the welfare of its citizens, including those who derive cultural, historical, and economic benefits from the lobster fishery, and its direct economic interests that have the potential to be impacted.

**3.      Maine DMR's interest may be impaired if Federal Defendants prevail.**

An applicant for intervention as of right must also demonstrate that the litigation "may as a practical matter impair or impede the movant's ability to protect its interest."  Fed. R. Civ. P. 24(a)(2).  In the D.C. Circuit, courts look to the "practical consequences" of denying intervention.  *Nat. Res. Def. Council v. Costle,* 561 F.2d 904, 909 (D.C. Cir. 1977).

The State of Maine may suffer a practical impairment of its interest by the Court's final disposition of this controversy.  The failure of Federal Defendants to use the best available scientific information when making determinations regarding threats to the North Atlantic right

whale population and protective measures needed to respond to those threats and to analyze the effects of Maine's lobster fishery on right whale population in this context is having needlessly adverse consequences on the lobster fishery and the State's fishing-dependent communities. A ruling in Federal Defendants' favor would impair the State's interests because it would amount to an endorsement of determinations that over emphasize the threat to right whales posed by the lobster fishery and impose restrictive measures on the fishery that are both uncalled for in light of the threat posed and unlikely to lead to any meaningful conservation benefits for the right whale.

### 4.    Maine DMR's interests cannot be adequately represented by existing parties.

Lastly, a party seeking to intervene as a matter of right must "show that the representation of his interest by existing parties may be inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972) (cleaned up). The D.C. Circuit describes this requirement as "not onerous," *Fund for Animals*, 322 F.3d at 735, and "low." *Id.* at 736, n. 7. A proposed intervenor should ordinarily be allowed to intervene unless it is clear that a party will provide adequate representation. *Crossroads*, 788 F.3d at 321 (quoting *United States v. Am. Tel & Tel. Co.*, 642 F.2d at 1293).

None of the existing parties to the litigation can adequately represent the State's interests. Plaintiff's interests are narrower than Maine DMR's interests. Plaintiff has explained that it is a fishing industry association of lobster harvesters. MLA Compl. ¶ 18. While the lobster fishery is important to the State and its economy, as described above, Maine's interests are broader, for example, including the sustainable management of natural resources beyond the lobster fishery including other native wildlife. Maine has the legal authority to manage and develop all of the resources throughout the water column and on and under the seafloor, including navigation, fishing, and commerce. Me. Stat. tit. 1 § 2 (1973). As the State agency entrusted with management

of marine resources within state waters, Maine DMR's broader purposes include conserving and developing marine and estuarine resources, conducting and sponsoring scientific research, and promoting and developing Maine coastal fishing industries. Me. Rev. Stat. tit. 12, § 6021 (1977); Me. Rev. Stat. tit. 12 §§ 6051-52 (1977). On the other hand, Federal Defendants have a duty to represent the interests of the general public across the United States. The D.C. Circuit has held that the federal government, which is required to represent the interests of the American people, does not adequately represent the interests of aspiring intervenors seeking to protect a more narrowly tailored set of interests. *See Fund for Animals*, 322 F.3d at 736-37; *see also Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177-78 (9th Cir. 2011). Plainly, this principle applies here. Federal Defendants – charged with representing the interests of the general public across the nation – have failed to adequately represent the interests of the State of Maine and disregarded the best available scientific information when making determinations with respect to the lobster fishery in violation of their obligations under the ESA and APA. Maine and the Federal Defendants are not in alignment as to the appropriate conservation measures for right whales, or the purported threats to right whales from the conduct of the State lobster fishery. *See, e.g.,* Ware Decl. at ¶¶ 8-10 and Exhibit A. As Maine DMR stated in its comment letter on the draft biological opinion, Maine is "deeply concerned that, while there are several sources of human caused [right whale] mortality, the draft Bi-Op places the overwhelming majority of the burden to reduce mortality/serious injury (M/SI) on US fisheries, and specifically the US trap/pot fishery." Ware Decl., Exhibit A at 1. Federal Defendants failed to address this and Maine DMR's other concerns in the final biological opinion. *Id.* at ¶ 8.

16

Intervenor-Defendants also do not adequately represent Maine DMR's interests.  In fact, their interests are contrary to Maine DMR's interests as their intervention papers in this case and the positions they have taken in *Center for Biological Diversity v. Ross* demonstrate.

In these circumstances, the interests of the other parties and Maine DMR "might diverge during the course of the litigation."  *Fund for Animals*, 322 F.3d at 736; *see also WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 997 (10th Cir. 2009) (recognizing that a non-federal actor should not be required to rely on a federal agency to protect its interests, in part because the agency could shift its policy positions during litigation).  Therefore, even where "there may be a partial congruence of interests, that does not guarantee the adequacy of representation."  *Fund for Animals*, 322 F.3d at 737 (granting intervention).

Given the minimal showing necessary to find inadequate representation, Maine DMR clearly satisfies the final criterion of Rule 24(a)(2).  Accordingly, the Court should grant intervention as a matter of right.

### D.      Alternatively, Maine DMR should be granted permissive intervention.

In the event the Court does not grant intervention as of right, the Court should permit Maine, through Maine DMR, permissive intervention.  Federal Rule of Civil Procedure 24(b)(1)(B) states: "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Subsection (b)(3) provides: "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

District courts have "wide latitude" in deciding whether to grant permissive intervention. *See Equal Emp't Opportunity Comm'n v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).  As set forth above, Maine DMR's motion is timely and will not unduly delay these

proceedings or prejudice adjudication of the existing parties' rights.  The claims asserted in the State's proposed complaint involve the same issues of law the MLA has raised or will raise.  These claims therefore satisfy the "common question" requirement for permissive intervention.

Accordingly, because Maine DMR's timely intervention motion will address similar issues of law and fact, the criteria for permissive intervention are met.

## IV.    CONCLUSION.

Having demonstrated that the requirements for intervention are met, the State of Maine, through its Department of Marine Resources, respectfully requests the Court grant its motion to intervene as of right in this case as a plaintiff-intervenor. In the alternative, Maine DMR respectfully requests the Court grant its request to permissively intervene in this case as a plaintiff-intervenor.

Dated:  December 16, 2021

Respectfully submitted,

*/s/ Linda R. Larson*
Linda R. Larson, D.D.C. Bar No. MI00059
Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone:  206.395.7630
Facsimile:   206.257.0780
llarson@nossaman.com

Paul S. Weiland, D.D.C. Bar No. CA00005
Nossaman LLP
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone:  949.833.7800
Facsimile:   949.833.7878
pweiland@nossaman.com

*Attorneys for the State of Maine, Maine Department of Marine Resources*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the United States District Court for the District of Columbia on December 16, 2021, via the Court's CM/ECF system, and that parties and their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system.

Dated:  December 16, 2021

*/s/ Linda R. Larson*
Linda R. Larson
