UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAINE LOBSTERMEN'S ASSOCIATION, INC., <br><br> Plaintiff, <br><br> and <br><br> STATE OF MAINE, DEPARTMENT OF MARINE RESOURCES, <br><br> Intervenor-Plaintiff, <br><br> and <br><br> MASSACHUSETTS LOBSTERMEN'S ASSOCIATION, INC., <br><br> Intervenor-Plaintiff, <br><br> and <br><br> DISTRICT 4 LODGE OF THE INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, LOCAL LODGE 207, <br><br> Intervenor-Plaintiff, <br><br> v. <br><br> NATIONAL MARINE FISHERIES SERVICE, *et al.*, <br><br> Defendants, <br><br> and <br><br> CONSERVATION LAW FOUNDATION, *et al.*, <br><br> Intervenor-Defendants. | Civil Action No. 21-2509 (JEB) |

1

**MEMORANDUM OPINION**

At the end of a two-year voyage — with the shore at last in sight — the Court is presented with the question of whether it should drop its sails and drift a little while longer. Earlier this year, the D.C. Circuit reversed this Court's grant of summary judgment in favor of Defendants National Marine Fisheries Service, Commerce Secretary Gina Raimondo, and Assistant Administrator for Fisheries Janet Coit. The Circuit directed this Court on remand to enter summary judgment for Plaintiff lobstermen, vacate the Service's 2021 Biological Opinion in part, and remand the 2021 Final Rule without vacatur. On the day the Circuit's mandate issued — fearing that the Circuit's disposition could moot or complicate the issues in a related case pending before this Court, CBD v. Raimondo, No. 18-112 (D.D.C.) — intervenor conservation groups moved to stay the execution of the mandate until after the Court resolves all outstanding claims in CBD. Finding that it has no such authority and that, in any event, such a stay would be unwarranted, the Court will deny the Motion.

**I.      Background**

The legal, factual, and procedural background of this case has previously been covered in extensive detail by this Court and by the D.C. Circuit. See Maine Lobstermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv., 626 F. Supp. 3d 46 (D.D.C. 2022); Maine Lobstermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv., 70 F.4th 582 (D.C. Cir. 2023); see also Ctr. for Biological Diversity v. Raimondo, 610 F. Supp. 3d 252 (D.D.C. 2022) (CBD III); Ctr. for Biological Diversity v. Ross, 480 F. Supp. 3d 236 (D.D.C. 2020) (CBD II); Ctr. for Biological Diversity v. Ross, 613 F. Supp. 3d 336 (D.D.C. 2020) (CBD I). The briefest of overviews will therefore suffice at this point.

In 2021, NMFS issued a Biological Opinion attributing a recent decline in the North Atlantic right-whale population in part to entanglements with lobster-fishing gear and promulgated a Final Rule aimed at remediating the problem. See MELA, 626 F. Supp. 3d at 54; MELA, 70 F.4th 582 at 588–90. Stakeholders responded by filing two actions in this Court challenging the BiOp and Final Rule from opposite flanks. Plaintiff lobstermen in this case allege that the BiOp overstates the impact of their fishery on the right-whale population and that the Final Rule is too restrictive. MELA, 626 F. Supp. 3d at 55. Conservation groups, in an earlier-filed action, alleged that the BiOp violated the Endangered Species Act and Marine Mammal Protection Act and that the Final Rule was insufficiently protective of the right whale. Id. at 54; see also CBD III, 610 F. Supp. 3d at 258. This Court granted summary judgment in the conservation groups' favor in July 2022 and remanded the Final Rule without vacatur and remanded the BiOp while holding the question of vacatur in abeyance. CBD III, 610 F. Supp. 3d at 279–80; Ctr. for Biological Diversity v. Raimondo, 2022 WL 17039193, at *3 (D.D.C. Nov. 17, 2022). In that same vein, the Court granted summary judgment for NMFS in this case in September 2022, and the lobstermen appealed. See MELA, 626 F. Supp. 3d at 69; MELA, 70 F.4th at 591.

In December 2022, while this case was on appeal, Congress enacted the Consolidated Appropriations Act, which provided, in relevant part, that the Service's Final Rule "shall be deemed sufficient to ensure that the continued Federal and State authorizations of the American lobster and Jonah crab fisheries are in full compliance with the [MMPA] and the [ESA]" until December 31, 2028. See Pub. L. No. 117-328, Division JJ, § 101(a), 136 Stat. 4459, 6089–90 (2022). The Service then moved to dismiss CBD as moot in light of the CAA, CBD v. Raimondo, No. 18-112 (D.D.C.), ECF No. 245 (Fed. Def. MTD), and filed a similar motion in

this case before the D.C. Circuit.  See MELA v. NMFS, No. 22-5238 (D.C. Cir. Jan. 24, 2023) (Fed. Def. App. MTD).  This Court stayed CBD pending the D.C. Circuit's resolution of the lobstermen's appeal.  See CBD v. Raimondo, No. 18-112 (D.D.C. Jun. 5, 2023), ECF No. 250 (Stay Order).

In June 2023, the Court of Appeals denied the Service's motion to dismiss, reversed this Court's summary-judgment order, and remanded the matter here with instructions to enter summary judgment for the loberstermen, vacate the BiOp, and remand the Final Rule to the Service.  See MELA, 70 F.4th 593–95, 602.  Conservation groups — Intervenor-Defendants in this action — now move to stay the execution of that mandate pending the resolution of their outstanding claims in CBD.

## II.  Legal Standard

"Under the mandate rule, 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'"  Indep. Petroleum Ass'n of Am. v. Babbitt, 235 F.3d 588, 596–97 (D.C. Cir. 2001) (quoting Briggs v. Pa. R.R. Co., 334 U.S. 304, 306 (1948)); see also Yablonski v. United Mine Workers of Am., 454 F.2d 1036, 1038 (D.C. Cir. 1971) (noting that lower court may violate neither the "letter" nor "spirit" of the mandate).  The rule is a species of the law-of-the-case doctrine, which "prevents courts from reconsidering issues that have already been decided in the same case."  Babbitt, 235 F.3d at 597; see also Am. Council of Blind v. Mnuchin, 977 F.3d 1, 6 (D.C. Cir. 2020) ("The mandate rule is a doctrine of judicial administration; its goal is to 'achieve finality,' making it possible for appellate courts to do their job.") (citation omitted).  For the mandate rule to apply, the issue must "actually have been decided either expressly or by necessary implication" on appeal: "The mere fact that it could

4

have been decided is not sufficient to foreclose the issue on remand." Maggard v. O'Connell, 703 F.2d 1284, 1289 (D.C. Cir. 1983) (cleaned up) (emphasis added).

At the same time, a federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997) (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). In "the exercise of [its] judgment," the court must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." Belize Soc. Dev. Ltd. v. Gov't of Belize, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (citation omitted) (quoting Landis, 299 U.S. at 254–55; then citing id. at 259). "The proponent of a stay bears the burden of establishing its need." Clinton, 520 U.S. at 708 (citing Landis, 299 U.S. at 255). In order to determine whether a stay should issue, then, this Court considers the three Landis factors: (1) harm to the nonmoving party if a stay does issue; (2) the moving party's need for a stay — that is, the harm to the moving party if a stay does not issue; and (3) whether a stay would promote efficient use of the Court's resources. Where the moving party seeks a stay "of indefinite duration" — *i.e.*, when "the record fails to show either what a 'resolution' of [the] case would entail or when such a resolution is likely to be reached" — that party must show not just a need for a stay under the second factor, but "a pressing need." Belize, 668 F.3d at 731–32 (quoting Landis, 299 U.S. at 255).

**III.   Analysis**

Intervenor-Defendants beseech the Court to stay the execution of the D.C. Circuit's mandate in the exercise of its discretionary authority to manage its own docket. The Court, however, finds that the mandate rule forecloses such relief and that, even if it possessed the authority, a stay should not issue.

Begin with the issue of the Court's authority. As noted earlier, the Court must abide by the letter and spirit of the D.C. Circuit's mandate. See Yablonski, 454 F.2d at 1038. Finding that NMFS's presumption in favor of the North Atlantic right whale underpinning the 2021 BiOp was a "serious" error, the Circuit directed this Court to enter summary judgment for the lobstermen on two counts of their Complaint, vacate the BiOp as applied to the lobster and Jonah crab fisheries, and remand the Final Rule. See MELA, 70 F.4th at 601–02. Although the Circuit did not specifically address the issue of when the Court should implement those directives, the Court believes that it would violate the spirit of the mandate to delay their implementation. After all, the entry of final judgment in accordance with the mandate is a ministerial act that requires no further substantive proceedings — in short, a relatively simple command, but not a toothless one that can be suspended or delayed at the option of the court to which it is addressed. Cf. United States v. Shaw, 115 F. Supp. 532 (D.D.C. 1953) ("[R]eceipt by this Court . . . of a mandate of its superior court . . . is a purely ministerial act which cannot be stayed by action here. . . . [The Court] cannot vary or examine the command for any other purpose than execution according to its terms."); Harris News Agency, Inc. v. Bowers, 2016 WL 3920163, at *2 n.9 (D. Neb. July 15, 2016) ("Because the case was remanded with directions to enter summary judgment in favor of Petitioner, this court's entry of judgment on March 3, 2016, was 'a purely ministerial or clerical act.'") (citation omitted); Maness v. Meyers, 419 U.S. 449, 458 (1975) (noting "basic proposition" that "all orders and judgments of courts must be complied with promptly").

The conservation groups, furthermore, cite no case in which a court has granted such a motion. The first set of cases they cite involve a district court staying judgment of its own decisions. See ECF No. 88 (Mot.) at 9; Hamid v. United States, 247 F. Supp. 3d 131, 133

(D.D.C. 2017) (granting summary judgment for defendants but staying entry of final judgment); Haw. Longline Ass'n v. NMFS, 288 F. Supp. 2d 7, 12 (D.D.C. 2003) (staying mandate of opinion and order vacating NMFS biological opinion and final rule for a few months); Laffey v. Nw. Airlines, Inc., 1983 WL 463, at *1 (D.D.C. Feb. 22, 1983) (granting a "stay, pending appeal, of execution and enforcement of the monetary awards in the final judgment"). Its other cases are equally inapposite because the mandate of the Court of Appeals required the district court to conduct further substantive proceedings, the timing of which was at least colorably a matter of docket management. See Mot. at 11–12; Harte v. Bd. of Comm'rs of the Cnty. of Johnson Cnty., Kan., 2017 WL 4697506, at *3 (D. Kan. Oct. 19, 2017) (noting, on remand from Tenth Circuit's reversal of summary judgment decision, that court would have "inherent authority" to delay trial until after defendants' certiorari petition was resolved); United States v. Sample, 2018 WL 6622198, at *2 (D.N.M. Dec. 18, 2018) (noting, following a Tenth Circuit remand for resentencing, that the court "has discretion in controlling its docket and scheduling the resentencing"). Absent any D.C. Circuit authority or other persuasive caselaw sanctioning a lower court's delay in executing an appellate mandate under the circumstances here, the Court will not venture into those uncharted waters.

      A stay would be unwarranted under the Landis factors, in any event, even if the Court possessed the authority that conservation groups ascribe to it. See Belize, 668 F.3d at 732–33 (quoting Landis, 299 U.S. at 254–55; then citing id. at 259). First, non-movants face some harm if a stay is issued. Federal Defendants note that they are "currently working on issues relating to North Atlantic right whales and the American lobster and Jonah crab fisheries consistent with the direction of the [CAA]," and staying the entry of final judgment would "inject significant regulatory uncertainty for all stakeholders." ECF No. 91 (Fed. Def. Opp.) at 1–2; see also id. at

5. They need to consult those stakeholders in anticipation of the new rule that will issue in 2028, see Mot. at 15 (quoting CBD v. Raimondo, No. 18-112 (D.D.C. May 16, 2023), ECF No. 245-1 at 16) — a task rendered more difficult if the legal effect of the D.C. Circuit's ruling is suspended for an undetermined period of time. Plaintiff lobstermen, for their part, have "invested substantial time, energy, and resources" in securing victory on appeal and require the entry of judgment to "seek a recovery of attorneys' fees under the Equal Access to Justice Act." ECF No. 92 (Pl. Opp.) at 9.

      The conservation groups, on the other hand, have failed to identify harm — let alone a pressing need — sufficient to justify their requested stay of indefinite duration. The groups' requested stay is of indefinite duration because it could vary by months or years depending on whether there are any outstanding and non-moot claims remaining in CBD. More specifically, these Intervenor-Defendants' alleged harms in the event no stay is issued rest on several layers of inference and speculation — namely, that the entry of judgment would then moot their CBD claims, that the Court would grant NMFS's motion to dismiss on what remains in that case, and that NMFS would subsequently "revert to form in 2028, issuing yet another biological opinion that fails to comply with the ESA[]." Mot. at 14. Such guesswork does not convince the Court that a pressing need exists.

      Their arguments regarding the efficient use of the Court's resources likewise rest on conjecture — the possibility that NMFS would err (in a manner that the entry of final judgment for the plaintiffs in CBD would otherwise avert) in issuing a new rule in 2028 and trigger further litigation. See Mot. at 13–14. Meanwhile, conservation groups ask the court to entertain further proceedings in CBD that they fear may well be obviated by the entry of final judgment in this

case. On these facts, the Court is hard pressed to conclude that a stay is the more efficient course.

In short, all three Landis factors would weigh against the issuance of a stay, even if the Court had the authority to grant the conservation groups' Motion.

## IV. Conclusion

The Court, accordingly, will deny the Motion to Stay Execution of the Mandate. An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: October 30, 2023